UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| KEITH TOWNSEND | CIVIL ACTION |
|---|---|
| VERSUS | NO. 07-7651 |
| DIAMOND OFFSHORE | SECTION "J" (4) |

This matter was tried to the Court on July 27, 2009. After considering the pleadings, stipulations, all of the evidence and testimony submitted at trial, as well as the deposition testimony submitted and arguments of counsel, the Court renders these Findings of Fact and Conclusions of Law in accordance with Rule 52 (a) of the Federal Rules of Civil Procedure.

**<u>FINDINGS OF FACT and CONCLUSIONS OF LAW</u>**

Defendant Diamond Offshore[1] owns and operates a fleet of offshore drilling vessels. In June 2005, Keith Townsend applied

---

[1] The parties stipulated that Townsend was employed by Diamond Offshore Management Company, and that the vessel OCEAN CONCORD, was owned and operated by Diamond Offshore Services Company. For purposes of these findings and conclusions, the Court will simply refer to "Diamond" or "Diamond Offshore" as the employer/vessel owner.

for a job as a roustabout for Diamond. Following an initial employment interview, Diamond offered Townsend a job as a roustabout on an offshore drilling rig, conditioned upon his passing a physical examination and drug screening.  Diamond sent Townsend  to see its doctor in Houston for the physical examination.

As a routine part of the pre-employment physical examination, Diamond requires plain x-rays plus a limited or "screening" MRI of the lumbar spine.  The doctor who performed the pre-employment examination was Dr. Rashid Kahn, a physician with Concentra Medical in Houston, Texas.  Diamond contracts with Concentra to provide pre-employment physical examinations in the Houston area.  Diamond also contracts with its long time company physician, Dr. Howard Nelson, in the New Orleans area to provide similar services.  Dr. Nelson is also considered the "medical director" for Diamond.  He has worked with Diamond or its predecessor companies for almost forty years.

Diamond's policy is that if the physician in Houston has any questions or concerns about whether or not to pass an applicant on a physical exam, he or she should consult with Dr. Nelson for a final decision.  The medical doctors are also provided with detailed job descriptions, including a description of the physical demands for each job title.  There is no dispute that the job of a roustabout on an offshore drill vessel is classified

as a heavy manual labor job.

Townsend's screening MRI was interpreted by the radiologist as showing two herniated discs, with extruded fragments and nerve root involvement. Upon receiving this report, the examining physician, Dr. Khan, testified that he talked to Townsend about the MRI findings, and that Townsend denied any back symptoms or prior back injuries. In any event, Dr. Khan cleared Townsend for the roustabout job. At no time did Dr. Khan call or consult with Diamond's medical director, Dr. Nelson.

Diamond received a one page document from Dr. Khan stating that Townsend was physically qualified for employment as a roustabout, but did not receive the MRI report or the "medical questionnaire" filled out by Townsend at the Concentra Clinic.[2] This was in accord with Diamond's own policy, which instructed the examining physician not to send the MRI or x-rays reports, nor the medical questionnaire completed by the applicant.

Upon being hired, Townsend was assigned as a roustabout aboard the OCEAN CONCORD, a large, semi-submersible drilling vessel, working hitches of 14 days on and 14 days off. While employed in that capacity, sometime in early 2006, Townsend began seeing a local chiropractor in his home town during his 14 days

---

[2]Concentra and Diamond have been unable to locate this medical questionnaire, but Townsend admits that he denied having any previous back injuries or surgeries in his responses to the questionnaire.

3

off. He complained of pain in his back, extending into his thigh. Townsend attributed this to the heavy labor he was performing during his 14 days on the rig. This chiropractic treatment consisted of approximately ten visits over several months. The last visit was in early April, 2006. Townsend never disclosed these treatments to Diamond, although he used his Diamond health insurance to pay the chiropractor.[3]

In early May 2006, while on his days off, Townsend had an incident at home where he pulled a muscle in his back while helping a friend move some rocks for a rock wall. He saw a family doctor, who gave him something for pain and three days rest, then released him to return to work offshore. Townsend reported this incident to his supervisors on the rig before he returned to work.

After returning to work, plaintiff claims that on May 24, 2006, he was ordered by his supervisor to assist in respooling a new cable onto the No. 4 air tugger, located in the "moon pool" area of the vessel. The testimony was that this is ordinarily a three person job. Mr. Townsend testified he had never participated in this task previously. As part of the work, Townsend was told to manually pull a heavy cable[4] off a large

---

[3]Townsend also testified that he "talked about" seeing a chiropractor with several fellow crew members.

[4]The exact length or weight of the cable is unknown. Plaintiff testified it was 1 inch or 1 ½ inch steel cable, while

4

spool.  In the course of doing this, he felt a sharp, electrical-like shock in his back and all down his right leg.  This pain was different in both character and degree than his previous symptoms.  He reported the incident on the same day to the rig medic and an accident report filled out.  Eventually this incident led to Townsend undergoing lumbar disc surgery (discectomy) at the L4-5 level by Dr. Viet Tran, an orthopedist in Austin, Texas.

In hindsight, it is clear that Keith Townsend should not have been employed offshore as a roustabout.  Diamond says it relied on its doctor in Houston in employing Townsend in that capacity.  However, Diamond's "medical director", Dr. Howard Nelson, indicates that if he had been consulted, which he was not, he would not have cleared plaintiff for the roustabout job based on the MRI findings, regardless of whether plaintiff had previous back problems.  It turns out that plaintiff did have some relatively minor back problems before he went to work for Diamond, although there is no evidence of a prior claim or medical treatment.  Plaintiff admits he had some history of "muscle sprains" in the past, the last being about one year before he took preemployment exam.  He did not see a doctor at that time.

---

his supervisor thought it was 3/4 inch cable. Regardless, the Diamond supervisor admitted it was unsafe for one man to perform this task.

The parties have stipulated that Keith Townsend was employed as a Jones Act seaman and member of the crew of the OCEAN CONCORD, a vessel in navigation.  Plaintiff is not seeking maintenance and cure, as all his medical bills and maintenance have apparently been paid by Diamond. Plaintiff is also not seeking past or future loss of wages or earning capacity.[5] Townsend is seeking past and future general damages for pain and suffering related to having lumbar surgery.  He is also seeking future medical expenses, limited to palliative care.

Plaintiff argues that defendant was negligent by allowing him to be assigned to a heavy labor job offshore when it knew or should have known that it was unsafe for him to do this work based on the MRI findings in his preemployment physical examination.  Plaintiff also argues that he aggravated his back condition when he was pulling on the cable on May 24, 2006 and that Diamond was negligent in not assigning help for him to do this unfamiliar task.

In response, Diamond argues there were two other hands helping plaintiff at the time of his alleged accident, and they did not witness any type of accident.  Diamond also argues that it could not have been negligent in allowing plaintiff to go to work as a roustabout considering that it relied on the doctor in

---

[5]Presumably because he should never have been employed offshore to begin with, and was advanced wages during his medical treatment.

Houston who performed the physical examination and indicated that Mr. Townsend was qualified for the job.

Plaintiff makes a legal argument that under the Jones Act and general maritime law, the shipowner Diamond, is charged with the knowledge of its employees or its agents. Since Diamond contracted with the doctors in Houston to perform the required physical exam, they should be charged with knowledge of the results of that exam.

The benefits of the Jones Act are extended to "[a]ny seaman who shall suffer personal injury in the course of his employment * * *." Central Gulf Steamship Corp. Vs. Sambula, 405 F.2d 291, 298 (5th cir. 1968). In order to recover for negligence, the Jones Act requires that the seaman be *injured* in the course of employment. 46 USCS § 30104 (2009). Since the injury to Plaintiff's back occurred on the vessel, this case is covered by the Jones Act. Of course, to prevail on his claim, plaintiff must prove negligence on the part of his employer or unseaworthiness of the vessel.

The Jones Act is an "avowed departure from the rules of common law" with respect to agency law. Hopson v. Texaco, Inc., 383 U.S. 262, 263-264 (1966) (citing Sinkler v. Missouri Pac. R. Co., 356 U.S. 326, 329 (1958)); Simeon v. T. Smith & Son, Inc., 852 F.2d 1421, 1430 (5th Cir. La. 1988). It incorporates a broader group of people within its definition of agents than

7

traditional land-side common law, and includes as agents individuals with which the principal contracts.  Id. at 264 (extending liability to the principal for negligence on behalf of a transportation company which moved ill Jones Act seamen from the boat to land); Gregory v. Kirby Inland Marine, L.P., 2009 U.S. Dist. LEXIS 40842 (E.D. La. 2009).

The so-called Hopson/Sinkler doctrine is implicated in this case.  In Hopson, supra, the Supreme Court held that the Jones Act incorporates the standards of the Federal Employer's Liability Act, which "renders an employer liable for injuries negligently inflicted on its employees by its 'officers, agents or employees.'"  Quoting an earlier ruling in a FELA case, [Sinkler, supra], the Court held that "when [an] employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of ...FELA."  Hopson, 383 U.S. at 264, 86 S. Ct. At 766.

Furthermore, as a case by one circuit court recently reminded, "the Supreme Court noted in Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S. Ct. 262 (1939), [that] the Jones Act was intended to expand — not limit — protections for seamen, and usually disallows 'the application of rules of the common law which would affect [seamen] harshly.'" Rannals v. Diamond Jo Casino, 265 F.3d 442, 448 (6th Cir. 2001).  The Jones Act is

8

entitled to a liberal construction to accomplish its beneficent purposes. Id. "In other words, in Jones Act cases, an employer is generally stripped of its common-law defenses. Id.

Diamond Offshore contracted with Concentra to provide pre-employment physicals. Dr. Khan was performing within the contract's mandate. Since contractors are agents under the Jones Act, the knowledge of Dr. Khan, as agent, is imputed to Diamond Offshore, the principal. Mr. Townsend was sent to Dr. Khan by Diamond Offshore, indicating that Dr. Khan was working in the interest of Diamond Offshore. In light of the reasonable assumption that Dr. Khan would communicate with his principal/employer, actual notice of Mr. Townsend's condition is not required to prove negligent hiring on behalf of Diamond Offshore.[6] In fact, Dr. Khan did communicate with Diamond Offshore, sending in a Diamond-prepared form which only elicited an opinion as to whether the applicant was fit or not fit for the job assignment.[7]

---

[6] In the past, the Supreme Court has held a vessel owner liable for the negligence of a physician in its employ. De Zon v. American President Lines, 318 U.S. 660, 664 (1943). The Fifth Circuit has also held the vessel owner liable for the negligence of a doctor selected by the ship's agent for treatment of an injured seaman. Central Gulf Steamship Corp. vs. Sambula, 405 F.2d 291 (5th Cir. 1968). The ship was responsible for the negligence of such doctor as a result of his engagement by the ship.

[7] Notably, Diamond's own policy of instructing the doctor not to send copies of the MRI or x-ray reports was largely responsible for Diamond's ignorance of pertinent medical

The Court finds that Diamond knew or should have known that Keith Townsend was not physically qualified for heavy manual labor on its offshore drilling vessel. The Court is not persuaded by Diamond's defense that it cannot be held liable because it relied on Dr. Khan's advice. Dr. Khan was acting as the agent of Diamond pursuant to its contract with Concentra. As such, Diamond is charged with the knowledge of its authorized agent. <u>Rannals</u>, supra, 265 F.3d at 449-50. Diamond's own medical director, Dr. Nelson, testified that Townsend should not have been cleared to work as a roustabout. In Dr. Nelson's opinion, Townsend was a "sitting duck" for a serious back injury.

The Court distinguishes this case from <u>Pennington v. Pacific Coast Trans. Co.</u>, 419 F.2d 122 (5th Cir. 1969), upon which defendant relies, in several ways. In that case, the plaintiff Pennington had not yet been offered employment when he underwent the pre-employment physical. <u>Id.</u> at 123. Additionally, Pennington only alleged negligence on behalf of the physician who approved him for work and not the employer, whereas Diamond has been sued *as Townsend's employer* in this case. <u>Id.</u> At 124. Pennington relied on the advice of an outside physician who negligently indicated that he was fit for employment. <u>Id.</u> at 124. Finally, Pennington sustained an injury unaffiliated with the heavy work he was hired to do — rather, he sustained an injury standing up

---

information.

from reading the newspaper. Id.

The reasoning employed in Bessard v. Omega Protein, Inc.,2008 U.S. Dist. LEXIS 29241 (E.D. La. 2008) is instructive in the present case.  In Bressard, Plaintiff underwent a pre-employment physical and relied on clearance from a contracted physician. Bressard at *2. As a result of the negligent clearance, Plaintiff sustained injuries while performing heavy manual labor. Id. In Bressard, the Court distinguished Pennington based on its attribution of negligence. Id at *9. In Pennington, Plaintiff claimed that the Doctor was negligent but the Fifth Circuit found that the Doctor's negligence did not occur during the course or scope of plaintiff's employment. Pennington at 124. In Bressard, the Court found that by alleging negligence on behalf of his employer, as Townsend has done, Bressard met the course and scope requirements of the Jones Act. Bressard at *9.

There is no doubt that Mr. Townsend had a pre-existing condition in his back prior to his employment with Diamond. However, the Court is convinced that the evidence preponderates to a finding that whatever pre-existing condition was present, it was aggravated or exacerbated by the incident of May 24, 2006 when Townsend was injured while pulling a cable off a large spool aboard the OCEAN CONCORD.  Townsend's testimony was credible in this respect.  He described being instructed to manually pull heavy cable off a large spool so that it could be used to re-

11

spool the air tugger.  There was a significant amount of routine maintenance work proceeding at the time of the incident because the vessel was under tow heading towards a shipyard in Mobile, Alabama.  While two other hands were in his crew, Townsend testified that neither was actually present or helping to handle the cable spool when he was injured.  The testimony of these two hands was somewhat vague and unclear as to exactly what they were doing and at what time.  It is undisputed that during or immediately following the un-spooling of the cable, Townsend reported his injury to his supervisor on the rig and then made a written report to the rig's medic.  He was sent in for medical treatment the same day.  Both the accident report and the initial medical record indicate the accident occurred as described by Townsend in his trial testimony.

It is not necessary to describe in detail the post-injury medical evidence in this case.  Townsend initially saw Diamond's medical director, Dr. Logan, and then returned home to Texas for further treatment.  He was referred to Dr. Viet Tran, an orthopedic surgeon in Austin. The chief complaints were low back pain and radiating pain down the right leg.  Following a number of diagnostic tests and conservative treatment, Dr. Tran performed a lumbar discectomy at the L4-L5 level in December 2006.  Initially the surgery relieved most of Townsend's right leg pain, but the back pain persisted.  Over the next year,

Townsend underwent other diagnostic tests and epidural injections, without further relief.  At some point, Dr. Tran suggested a possible discogram and lumbar fusion.  Townsend did not want to have a second surgery and Dr. Tran said there was no reason to undergo a discogram unless the patient wanted surgery.

The Court is convinced that although Keith Townsend had a significant pre-existing condition prior to his employment with Diamond, the May 24, 2006 incident aggravated Mr. Townsend's pre-existing condition.  This led directly to the surgery performed by Dr. Tran in December, 2006.  For this aggravation and surgery, the Court awards general damages (physical and mental pain and suffering)  in the total sum of $200,000, apportioned $150,000 for past general damages and $50,000 for future general damages.

There was insufficient evidence to support any award for future medical expenses.

For the reasons stated above, the Court additionally finds that Diamond was negligent and that Townsend was comparatively negligent in the circumstances of this case.  Townsend was clearly aware of the pre-employment MRI findings, which were discussed with him by Dr. Khan.  Townsend also could have asked for additional help to pull the cable from the spool on May 24, 2006.  For these reasons, the Court determines Townsend is fifty per cent responsible for his injury and damages.  His damage award will be reduced accordingly.

Plaintiff is also entitled to prejudgment interest. The Fifth Circuit has explained that "[p]rejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." <u>Jauch v. Nautical Services, Inc.</u>, 470 F.3d 207, 214-15 (5th Cir. 2006). It is generally accepted that, under maritime law, the award of prejudgment interest is "well-nigh automatic." <u>Reeled Tubing, Inc. v. M/V CHAD G</u>, 794 F.2d 1026, 1028 (5th Cir. 1986). The Court is of the opinion that, based on the record and applicable principles of maritime law, prejudgment interest in this case should accrue from the date of injury, May 24, 2006.

Judgment will be entered in favor of plaintiff in the net amount of $100,000 plus prejudgment interest from May 24, 2006 at the rate of 6% per annum on past damages, interest at the same rate on all damages from the date of judgment until paid, and for all costs.

New Orleans, Louisiana this the 7th day of August, 2009.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE